THE PLK LAW GROUP, P.C.
284 U.S. Route 206
Bldg. E Suite 10
Hillsborough, NJ 08844
908-431-3108

*Attorneys for Plaintiffs Simone Kelly-Brown and*
*Own Your Power Communications, Inc.*

| | |
|---|---|
| SIMONE KELLY-BROWN and OWN YOUR POWER COMMUNICATIONS, INC. <br><br> Plaintiffs, <br><br> v. <br><br> OPRAH WINFREY, HARPO PRODUCTIONS, INC., HARPO, INC., HEARST CORPORATION, HEARST COMMUNICATIONS, INC., WELLS FARGO & COMPANY, ESTEE LAUDER COMPANIES, INC., CLINIQUE LABORATORIES, LLC, CHICO'S FAS, INC., ABC COMPANIES 1-100 (names being fictitious) AND JOHN DOES 1-100 (names being fictitious) <br><br> Defendants. | **UNITED STATES DISTRICT COURT** <br> **DISTRICT OF NEW JERSEY** <br><br> **CIVIL ACTION NO.**_____ <br><br><br> Hon. <br> United States District Judge <br><br> **COMPLAINT** |

Simone Kelly-Brown ("Kelly-Brown") and Own Your Power® Communications, Inc.,

("OYP, Inc.") (hereinafter individually and collectively referred to as "Plaintiffs" or

"Company"), by and through its attorneys, The PLK Law Group, P.C., by way of Complaint

against the Defendants, hereby say:

## PARTIES

1.      Plaintiff. OYP, Inc. is a Florida company duly organized and existing under the

laws of the State of Florida with a principal place of business at 300 Southwest 96th Street,

Pembroke Pines, Florida 33025.  Plaintiff, Kelly-Brown is the sole owner and CEO of OYP, Inc

residing at 300 Southwest 96th Street, Pembroke Pines, Florida 33025. Company has provided a

personal brand of self-awareness and motivational communication services nationally since 1996 by continuously advocating for people to take their life's dreams to the next level.

2.     Defendant, Oprah Winfrey ("Oprah") is an American television host, actress, producer, and philanthropist, best known for her self-titled, Emmy-award winning talk show, *The Oprah Winfrey Show.* Oprah's show became the highest-rated program of its kind in history, was nationally syndicated from 1986 to 2011, and boasted over 16 million viewers during its farewell show. Oprah is among the most influential women in the world. Oprah is a citizen of the State of Illinois whose only known address is 110 North Carpenter Street, Chicago Illinois 60607.

3.     Defendant, Harpo Productions, Inc. ("Harpo") is a Chicago-based, multimedia production corporation founded by Oprah, duly organized and existing under the laws of Illinois and maintains its principal place of business at 110 North Carpenter Street, Chicago, Illinois 60607. Harpo includes Harpo Films; Harpo Radio, Inc.; Harpo Studios; and Defendant, Harpo, Inc. (corporate headquarters for Harpo's families of businesses, and includes all service departments, such as Accounting, Human Resources and Technology, that support the various business units, also has offices at 110 North Carpenter Street, Chicago, Illinois 60607); and all agents and/or affiliates (collectively "Harpo"). Along with Oprah and Discovery Communications, Inc., Harpo also owns *OWN The Oprah Winfrey Network* or OWN, LLC ("OWN"). OWN debuted in 2011 in more than 80 million homes, and is known as "the network of Self Discovery, connecting people to each other and to their greatest potential."

4.     Defendant, Hearst Corporation is one of the largest diversified communications companies in the world, with offices at 300 West 57th Street, New York, New York 10019. Defendant, Hearst Communications, Inc. also has offices at 300 West 57th Street, New York,

2

New York 10019. Hearst Corporation along with Hearst Communications, Inc. publish more than 300 magazines around the world through the magazine unit, Hearst Magazines, including *O, The Oprah Magazine*. Hearst Magazines Digital Media is a unit of Hearst Magazines launched in 2006 which oversees more than 28 websites and 14 mobile sites for brands including the digital magazine *O, The Oprah Magazine*, and has published more than 85 applications and digital editions for the iPad, iPhone and iPod Touch, as well as the Android platform, including *"O, The Oprah Magazine Interactive Edition"* (collectively "Hearst").

5.    Defendant, Wells Fargo & Company ("Wells Fargo") is an American multi-national diversified financial services company with operations around the world, and with offices at 420 Montgomery Street, San Francisco, California 94104. Wells Fargo is the fourth largest bank in the U.S. by assets and the second largest bank by market capitalization.

6.    Defendant, Estee Lauder Companies, Inc. ("Estee Lauder"), with offices at 767 Fifth Avenue, New York, New York 10153, manufactures and markets skincare, makeup, fragrance and hair care products, with products sold in over 150 countries and territories. For fiscal 2010, net sales were $7.8 billion and net earnings were $478 million.  Defendant, Clinique Laboratories, LLC was branded in 1968 and is wholly-owned by Estee Lauder (collectively "Clinique").

7.    Defendant, Chico's FAS, Inc., with offices at 11215 Metro Parkway, Fort Meyers, Florida 33966, consists of three (3) women's specialty brands offering private branded, sophisticated apparel for more than 25 years and operates more than 1,150 boutiques throughout the U.S. and via direct-to-consumer services.  One of these three brands is Chico's (collectively "Chico's") which currently operates more than 590 frontline boutiques and 63 outlets in 48

states, including New Jersey, as well as the District of Columbia and Puerto Rico, in addition to publishing a monthly catalog and offering round-the-clock shopping at www.chicos.com.

## NATURE OF THE ACTION

8.      This is an action for direct, contributory, and vicarious trademark infringement, trademark counterfeiting, reverse confusion, false designation of origin, and unfair competition under the Lanham Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.*; unfair competition pursuant to N.J. Stat. § 56:4-1; New Jersey common law tortious interference with an economic advantage; and other such claims referenced herein all arising from Defendants' unauthorized use of Plaintiff's personal brand of motivational and communication services under the Trademark Own Your Power.®

9.      While continuously providing self-awareness and motivational communication services, Company originated a unique concept that manifests the thought and imagination that anyone can live their best life by believing "anything you want in life is attainable." Company deliberately chose an inimitable combination of words to identify itself as the source for these services, designating an "O" for Own, "Y" for Your, and "P" for Power, and arranged three select words thus creating the Own Your Power® word mark.  To prevent confusion, Kelly-Brown petitioned the United States Patent & Trademark Office ("USPTO") to grant exclusive ownership of the federally registered word mark, "Own Your Power®" (Registration No. 3,434,419) ("OYP Trademark" or "Trademark"). *See* Exhibit A.

10.     Over time, Company has spent considerable time, money and effort using the OYP Trademark in connection with its services by way of broadcast media, print media, the internet, and speaking engagements nationwide. *See* Exhibit B (Cert. of Simone Kelly-Brown). The goodwill generated by this use has been so expansive and diverse that the Trademark is

widely recognized by the public as an indicia of source in connection with the Own Your Power®
Radio Show, the annual Own Your Power® Biz Conference, the Own Your Power® Lifestyle
Center, Own Your Power® retreats and the upcoming Own Your Power® E-Magazine, among
other successes.

11.     Despite Kelly-Brown's exclusive rights, Defendants began use of the exact letters,
words, and order of the OYP Trademark, which were already registered and used by the
Company, with Defendants' use even mirroring the way Company capitalized the first letter of
each word, in order to identify Harpo, Oprah, and other Defendants as advocates for individuals
to "live [their] best life" through self-awareness and motivational communication, the same type
as OYP Services. *See* Exhibit C. Defendants explicitly held themselves out as operating "in
Partnership with" one another and waged a national, multimedia, cross-promotional campaign of
willfully blind and deliberate use, through multiple channels, including but not limited to the
nationally distributed *O, The Oprah Magazine* ("Magazine"), affiliated websites such as
www.oprah.com and http://www.omagazine.info/ ("Websites"), Harpo's Twitter account, the
internationally broadcasted  *The Oprah Winfrey Show* and a celebrity panel event held on
September 16, 2010 ("OYP Event" or "Event") (hereinafter collectively referred to as
"Counterfeit Campaign"), and as such violated Plaintiff's exclusive rights as granted by the
USPTO.

12.     Defendants' brazenly unlawful disregard for the existence and use of Company's
Trademark and Defendants' subsequent use thereof created both actual confusion and a
likelihood of confusion as to the source of OYP Services as connected to the OYP Trademark.
Under such circumstances, with Defendants being much larger, spending more money, having a
wider reach, and an overlapping audience with the much smaller Company, particularly with one

5

of the most influential women in the world at the helm of this Partnership and Campaign to destroy Company's goodwill, Plaintiffs have been irreparably harmed.  Plaintiffs seek an injunction, damages and related relief.

## JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338.  Plaintiff's claims are predicated upon The Lanham Trademark Act of 1946, 15 U.S.C. §1051, *et seq.*

14.     This Court has supplemental jurisdiction over Plaintiff's claims arising under the statutory and the common law of the State of New Jersey pursuant to 28 U.S.C. § 1367(a) because the state claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

15.     Venue is properly founded in this District pursuant to 28 U.S.C. § 1391(b)-(c).

16.     This Court has personal jurisdiction over Defendants and Plaintiffs because all parties actively promote their services and/or products in New Jersey and specifically, intentionally, and knowingly target and/or conduct business in New Jersey.

## FACTS COMMON TO ALL CLAIMS OF RELIEF

### Company's Trademarked Use of Own Your Power®

17.     Kelly-Brown, in connection with OYP, Inc., owns and operates the website, www.ownyourpower.biz, which informs, promotes and sells motivational communications services in the areas of self-awareness, self-realization, and entrepreneurship ("OYP Services").

18.     Through this website, Company provides access to Own Your Power® media such as the Own Your Power® Radio Show, videos from Own Your Power® conferences, and Own Your Power® blog articles, all of which provide advocacy in the areas of the OYP Services.

19.     Kelly-Brown is the host of a radio show, known as the Own Your Power® Radio Show, and also appears at the annual Own Your Power® Retreat and other conferences. Through each venue, Plaintiffs provide OYP Services.

20.     Plaintiffs held the annual Own Your Power® conference on September 18, 2010 in New York City, which involved panels and speakers providing OYP Services.

21.     Company has registered the Own Your Power® word mark on the Principal Register of the USPTO thereby providing notice that Company both owns the OYP Trademark and possesses the exclusive right to use in connection with OYP Services.  A simple search of the USPTO's Register would have revealed the existence of both Company and Company's OYP Trademark to the Defendants.

**Defendants Establish an Explicit Partnership and Launch a National Counterfeit Campaign of Deceit and Infringement**

22.     Upon information and belief, long after Plaintiffs' adoption, use and federal registration of the OYP Trademark in connection with the Company's OYP Services, Defendants began selling, offering for sale, distributing, promoting and advertising services in interstate commerce bearing counterfeits and infringements of the OYP Trademark as it appears in connection with Plaintiffs' OYP Services and in the Trademark.

23.     Since the Campaign's inception, Defendants have held themselves out to the public as Partners for the benefit of this Counterfeit Campaign of unauthorized, infringing, counterfeit use of the Plaintiffs' OYP Trademark ("OYP Partner[ship]" or "Partner[ship]").

24.     This blatantly infringing, verbatim, source identifying use of Company's OYP Trademark began when the Partners boldly featured a Counterfeit OYP Trademark on the cover of the October 2010 issue of the Magazine ("October Issue") using the exact letters, words, and order indistinguishable from Company's Trademark in big, bold text. The October Issue,

7

distributed on or about September 13, 2010, was branded on its cover with the Counterfeit and infringing OYP Trademark, depicted such that the letters "O" in "Own Your Power" incorporated subtle design features of Harpo's registered and common law trademark "O." *See* Exhibit D.

25.     Harpo's registered and common law trademark "O" is the subject of Six (6) separate applications for registration on the Principal Register of the USPTO, of which Three (3) have been granted. Harpo's "O" trademark has also been incorporated into at least Nineteen (19) applications for registration on the Principal Register of the USPTO on behalf of Harpo or its subsidiary OWN, and has been used as a specimen in at least One (1) application for registration on the Principal Register of the USPTO on behalf of OWN.

26.     However, Defendants not only began to use the OYP Trademark without Company's authorization, but such use was prominently displayed, verbatim, and promulgated in order to identify the OYP Partnership as the source of Company's Trademark.  The spurious mark(s) or designation(s) used by Defendants in interstate commerce is not only identical in letters, words, and order with the OYP Trademark, but as the dominant feature of both marks is words, the marks are inherently indistinguishable.

27.     In the October Issue, which prominently displayed a Counterfeit of Plaintiffs' OYP Trademark in its entirety across the cover in word-for-word, bold, unavoidable letters, Wells Fargo, Clinique, and Chico's are explicitly listed as operating "IN PARTNERSHIP WITH" Harpo, Oprah and other Partners in furtherance of this rogue campaign advocating the collective efforts of the OYP Partnership.  *See* Exhibit E.

28.     The prominent promotion for the Partnership's Counterfeit Campaign in the October Issue directs the public to "LEARN more about POWER" by plugging in to

Oprah.com/power, a website which prominently features a banner containing the Partner's Counterfeit of the OYP Trademark on every page.  The Partnership's clear direction to readers to visit Harpo's website, where additional services have been offered under the mark "Own Your Power" since September 30, 2010, is a clear indication that the Partners are branding themselves as the true source for OYP Services.

29.      The October Issue also contained source identifying logos and designs which the Partnership has linked both to various Partnership services, including its annual "O Power List," as well as Kelly-Brown's OYP Trademark.

30.      Under agency principles, any Partner has the authority to bind both the Partnership and all other Partners; each Partner is an 'agent' of all the remaining Partners.  This Partnership exists regardless whether a writing exists to govern it.

31.      Upon information and belief, Defendants' conduct leaves the public no choice but to believe and rely on the unambiguous representations of the clear existence of the OYP Partnership.  Any reasonable member of the public seeing this representation would believe that the Defendants are not only holding themselves out as Partners in furtherance of this Counterfeit Campaign, but that the Partners are authorized to act on behalf of one another and bind both the OYP Partnership and all other Partners.

32.      The Defendants' deliberate use of the OYP Trademark without authorization from Plaintiffs continues beyond this issue of the Magazine, further expanding the misplaced designation of the OYP Partnership as the source for OYP Services.

**Defendants Pervasive Attack on Plaintiff and the OYP Trademark Continue with the Unauthorized Exploitation and Use**

33.      Upon information and belief, both Hearst and Harpo have fifty-percent ownership of the Magazine, which reaches out to the same audience as Company, providing services of

advocacy on behalf of self-awareness and motivation, telling its readership to "Live Your Best Life."   These services sound not only similar, but seem to be analogous to the OYP Services.

34.     Further still, Company's OYP Services are targeted mainly toward women, while the Magazine, by its own definition, is a "women's lifestyle magazine covering 360 degrees of a woman's life, guided by the values of Oprah Winfrey." *See* Exhibit F.  The OYP Partnership's use of these dangerously similar services with the undeniably confusing and previously registered "Own Your Power," were just the first step in a campaign to wipeout Company's goodwill and usurp its already secured, federally registered trademark.

35.     The look of the Magazine is different than its competitors on newsstands and has become part of the deliberately created brand of the Magazine.  In order to solidify this brand, it is general practice for the Magazine that Oprah, the creative source behind the Magazine, appear alone on the cover of every single issue, with very few exceptions, accompanied only by signature words illustrating the ideologies attributed to Oprah.

36.     Oprah not only contributes to the branding of the Magazine and Harpo, but has brazenly declared on the cover of the October 2010 issue of *Fortune Magazine*, "Now I accept that I'm a brand." *See* Exhibit G.  This issue strategically appeared on newsstands and doorsteps during the same month as the October Issue of the Magazine with the Partnership's Counterfeit OYP Trademark featured on the cover publicizing the Counterfeit Campaign.  As one of the most influential women in the world, Oprah knows the power of her brand.

37.     Upon information and belief, Defendants are familiar with trademark law and the practice of registering marks associated with large scale media campaigns.

38.     Even a simple Google search would have revealed the existence of Kelly-Brown and OYP, Inc., as well as the existence of Plaintiffs' Trademark. *See* Exhibit H.  The

Defendants' purposeful and deliberate dismissal of Plaintiffs' existence constitutes willful blindness.

39.     A Google search for "own your power" performed prior to and/or during the first days of the Counterfeit Campaign did not show any Harpo or OYP Partnership related results, but depicted Plaintiffs as the primary source for Own Your Power.  This all changed just one month into the Counterfeit Campaign, when even Google became so confused as to suggest "Oprah" in its auto-complete function. *See* Exhibit H.

40.     It is undeniable that Harpo, Oprah, and the Partners were trying to usurp the Company's registered Trademark.  The fact that the words "Own Your Power," italicized for emphasis, are emblazoned across Oprah's chest, who almost never shares that level of prominence of the cover of the Magazine and is herself Harpo's foremost brand, using the same font type as the Magazine's name and a font size which nearly eclipses that of the Magazine's name, is irrefutable evidence of Defendants' attempt to link the OYP Trademark with Harpo's own brand and indicate Defendants as the source of OYP Services rather than Company. *See* Exhibit D.

41.     This, however, was only the beginning of a pattern of deliberate and systematic unauthorized use by Defendants and a malicious intent to identify the Partners as the source for the OYP Services.

42.     It was unconscionable commercial practice, deception, fraud, false pretense, false promise, and misrepresentation for Defendants to use the OYP Trademark, without the consent of Kelly-Brown.

43.     Upon information and belief, Defendants knowingly concealed, suppressed, and/or omitted the material fact that they are not the owners of the OYP Trademark and the

source for motivational communications services in the areas of self-awareness, self-realization, and entrepreneurship under the OYP Trademark with intent that the public rely on the concealment, suppression, and/or omission in connection, distribution and advertisement of their Counterfeit Campaign.

44.     In the December 2010 issue of the Magazine ("December Issue"), the Partnership brazenly continued to publicize its Counterfeit Campaign with another prominent promotion once again directing the public to visit Oprah.com/power; this was both an ongoing promotion of the OYP Partnership and a continual designation of Harpo, Oprah, Clinique, Chico's, Wells Fargo and other Partners as the source of OYP Services. *See* Exhibit E.

45.     The promotion clearly identifies the OYP Partnership's Event as the "FIRST-EVER OWN YOUR POWER EVENT."  This title and designation unmistakably provides the public with the understanding that since this is the "first-ever," there is more to come from the Partners.

**The Own Your Power Partners Conspire, Attacking the Plaintiff and Usurping Plaintiff's Trademark**

46.     In partnership with the OYP Partners and in furtherance of the infringing use of Plaintiffs' Trademark, Wells Fargo launched a concurrent "Your Retirement Dreams" campaign ("Promotional Campaign") in which a link to obtain a complimentary financial organization kit appeared on Harpo's Website. *See* Exhibit I.

47.     Upon information and belief, this concomitant Promotional Campaign advanced motivational communications services in the areas of self-awareness, self-realization, and entrepreneurship akin to the OYP Services being offered simultaneously by the OYP Partnership.  Wells Fargo further attached itself to the fraudulent misrepresentation of the OYP

Partnership as the source for the OYP Services by reinforcing motivational services and the possibility to "regain control of your retirement."

48.     Upon information and belief, Defendants are well aware of the value of exclusive rights and have experience with the management and control of brands and the business know-how to secure such assets as intellectual property. Each of the Partners has secured numerous federal trademark registrations.

49.     In paving the way for the introduction of OWN, Harpo secured multiple federal trademark registrations, including arranging a transfer of a pre-existing registration for "OWN ONYX WOMAN NETWORK" from Olabrice R. Jackson to Harpo, in an effort to avoid infringing Jackson's exclusive rights. *See* Exhibit J. This is just one example of how the OYP Partners exhibit demonstrable experience in performing basic trademark searches before launching new brands in connection with products and services.

50.     Considering that the word "OWN" is contained within Kelly-Brown's trademark, upon information and belief, Harpo became aware of Kelly-Brown's registration long before the Partnership was planning its Counterfeit Campaign, as Kelly-Brown's then pending registration for Own Your Power® likely appeared in the same trademark search as Olabrice R. Jackson's registration for "OWN ONYX WOMAN NETWORK" during 2007-2008.

51.     Upon information and belief, Wells Fargo, Clinique, Chico's, the Magazine, and thus Harpo, Hearst and Oprah control the nature and quality of the Partnership's Counterfeit services bearing their respective trademarks in furtherance and for the benefit of the OYP Partnership. Clearly, the Partners exercise sufficient control over the quality of the services offered as part of the Counterfeit Campaign with which their respective trademarks are licensed

and/or used in connection in order to prevent abandonment, which would occur pursuant to trademark law in the absence of such control.

52.     Upon information and belief, Defendants' licensed their respective trademarks for direct use in furtherance and for the benefit of the OYP Partnership and the Counterfeit Campaign, and thereby exercised the necessary level of vigilance over the Partnership's activities, including the OYP Event.  This caution and awareness includes both monitoring and controlling the Counterfeit Campaign, including where and how to affix the Partners' respective trademarks as well as clear and unambiguous specifications for the inspection and approval of Partnership's OYP Services being offered in connection therewith. *See* Exhibit K.

53.     The OYP Partnership's counterfeit and infringing use of Plaintiffs' OYP Trademark was reinforced at the OYP Event held by the Partnership in New York City on September 16, 2010.  The Event was just two days prior to Plaintiffs' annual Own Your Power conference – also held in New York City.

54.     At the Event, the source identifying trademarks of Chico's, Wells Fargo, Clinique, and the Magazine were all displayed along with the Defendants' Counterfeit of the OYP Trademark on promotional materials, including the background for the OYP Event's red carpet. *See* Exhibit K.

55.     Upon information and belief, celebrities and other attendees to the Event posed for promotional pictures standing in front of this backdrop, which prominently displayed Defendants' trademarks along with a Counterfeit OYP Trademark.  The Partnership's Counterfeit mark was given the same prominence in size, location and frequency as other Partners' trademarks, which were being used in a trademark manner, evidencing the Partners' intent to hold themselves out as equals in furtherance of the Counterfeit Campaign.

56.     The Counterfeit mark incorporated design features of Harpo's registered and common law trademark "O" in a similar manner as the Counterfeit mark used to publicize the Counterfeit Campaign in the Magazine and on the Partnership's Websites; the OYP Partnership intent to use a Counterfeit Trademark in both a Counterfeit and infringing manner is clear.

57.     Upon information and belief, the Partners have more than a financial relationship. The collective efforts furthering the OYP Partnership extend to a relationship of inclusive monitoring and control evidenced by the deliberate and intentional portrayal of the respective trademarks of each of the Partner's in support thereof.  Such a united public display is for the mutual benefit of the Partners as a means of showing committed investment in the success of the Counterfeit Campaign by all Defendants.

58.     Wells Fargo's Vice President of Retirement Marketing, Melissa Schilling's, public appearance at the Event represents Wells Fargo's level of commitment and investment in furtherance and in support of the OYP Partnership and the Counterfeit Campaign. *See* Exhibit K.

59.     Clinique's Wajma Basharyar's public appearance at the Event represents Clinique's level of commitment and investment in furtherance and in support of the OYP Partnership and the Counterfeit Campaign. *See* Exhibit K.

60.     Upon information and belief, as a national retailer serving women for over 25 years, Chico's derives a direct benefit from a source designation of Chico's in connection with the Counterfeit Campaign as part of the OYP Partnership, which also targets women.

61.     Even where a Partner did not directly Counterfeit and/or infringe the OYP Trademark, the explicit existence and continued support of the OYP Partnership in furtherance and for the benefit of the Counterfeit Campaign, as well as the trademark licensing and/or any other representations of a Partner's presence, directly evidences the Partner's vicarious liability.

This vicarious liability exists regardless whether the Partner had direct knowledge of the presence and/or of the use of the Counterfeit and/or infringing OYP Trademark.

62.     Likewise, each Partner's monitoring and control of the Counterfeit Campaign combined with knowledge of the OYP Trademark's existence directly evidences the Partner's liability for contributory infringement.  Each Defendant had constructive knowledge of the OYP Trademark from Kelly-Brown's federal registration, and each Defendant's willful blindness, thus constituting actual knowledge as to the OYP Trademark's existence, is evidenced by the Partner's failure to perform a simple internet search, which any reasonably prudent party would have done before embarking on such a Campaign.

**Continued Systematic and Deliberate Use of Plaintiff's OYP Trademark**

63.     The OYP Event, which is affiliated with Harpo's "O Power List," involved a seminar and workshop with speakers providing advocacy in the areas of self-awareness, self-realization, and entrepreneurship. *See* Exhibit K.

64.     Defendants prominently displayed a Counterfeit OYP Trademark, inclusive of the Harpo registered "O" trademark at the OYP Event. *See* Exhibit K.  The Partnership's use of a Counterfeit "own your power" in logos and in backdrops emphasizing the letter "O" at the Event was entirely consistent with Harpo's use of its registered trademark, "Live Your Best Life," clearly indicating the Partnership's use of "own your power" in a trademark manner.

65.     Defendants were not authorized by Plaintiffs to use the OYP Trademark.  Further still, Defendants' unauthorized use created actual and direct confusion between the OYP Partnership's Event and Company's Own Your Power® Biz Conference held just two days later on September 18, 2010 in the same city, also with seminars and workshops in the same areas of OYP Services.

66.     Video clips from the OYP Event featuring popular celebrities providing advice in a seminar and workshop format were made available by the Partnership on Harpo's Website as early as September 2010, further compounding the confusion. Video clips include captions referring to the Partners' "Own Your Power Event" and links containing source designating statements.

67.     At or about the time of the OYP Event, a Twitter account owned by or operating under the direction and control of the Partners and/or their affiliates or agents communicated an instantaneous message to over one hundred thousand consumers identifying the OYP Partnership as the source of the Event. *See* Exhibit K.

68.     The full-fledged takeover of the Plaintiffs' Trademark expanded as Harpo took the OYP Trademark, without authorization, and displayed it word-for-word all over its Websites' banners, features, and advertisements. *See* Exhibit L.

69.     Harpo's Websites inform, promote and sell services in the areas of self-awareness and motivational communications.  This is the same functionality as Plaintiffs' websites.

70.     Through its Websites, Harpo provides access to media deliberately referred to under the designation of a Counterfeit OYP Trademark, including but not limited to videos from the Partnership's OYP Event, articles advocating the OYP Services and excerpts from its October Issue of the Magazine, all of which promote Harpo's services in the areas of self-awareness and motivational communication.

71.     Likewise, Plaintiffs' websites provide access to media under the designation of her OYP Trademark in support of the OYP Services.

72.     As of September 30, 2010, Harpo branded at least Seventy Five (75) pages on its Websites with both a banner featuring an unauthorized Counterfeit use of the OYP Trademark

and a connected promotion for Harpo's Magazine likewise exploiting the Trademark. Countless

other pages on Partners' Websites include a separate advertisement for Harpo's Magazine

featuring Kelly-Brown's Trademark, and links and captions doing the same, all without

authorization. *See* Exhibit L.

73.     Approximately two weeks after the OYP Event, a Facebook page owned by or

operating under the direction and control of the Partners, their affiliates and/or agents

communicated an instantaneous message to over one hundred thousand consumers identifying

the Partnership as the source of the Event and displaying photographs of the Partnership's

counterfeit and infringing use of Plaintiffs' OYP Trademark. *See* Exhibit K.

74.     On or about September 27, 2010, Oprah appeared on the nationally televised and

syndicated *The Oprah Winfrey Show* ("Show") and prominently displayed the cover of the

October Issue along with the Counterfeit OYP Trademark.  Immediately after providing

motivational communications services to world renowned tennis icon Serena Williams

("Williams"), Oprah directed the audience's attention to the Partnership's counterfeit and

infringing use of OYP Trademark.  In an excited response, Williams declared "I need that!"

while reaching for the October Issue. *See* Exhibit M.

75.     Harpo has mimicked Plaintiffs' usage of the OYP Trademark to impress upon its

audience the importance of the associated OYP Services in such a dramatic fashion as to have

Oprah specifically pointing to each of the three words while advocating the same to Williams

and her audience worldwide. *See* Exhibit Q (video exhibit).

76.     Upon information and belief, Harpo provides extensive self-awareness and

motivational communication services on television with Oprah at the helm, and its Show is

described by authorities on the subject as helping "the viewers change themselves." (*See*

http://www.tv.com/the-oprah-winfrey-show/show/2972/summary.html?q=oprah&tag=
search_results; title;3).

77.     Upon information and belief, the December Issue of the Magazine, distributed on
or about November 13, 2010, highlighted the OYP Partnership and directed readers to Harpo's
website, where services under a Counterfeit OYP Trademark have continually been offered up to
the date of this Complaint. *See* Exhibits E and L. Said promotion for the Counterfeit Campaign
included the counterfeit and infringing version of Kelly-Brown's OYP Trademark, again
incorporating Harpo's registered and common law trademark "O."

**Plaintiffs Suffer Significant Harm from Defendants' Activities**

78.     Defendants have repeatedly taken Plaintiffs' Trademark word-for-word, and
exploited it, without authorization, in conjunction with Own Your Power services and the same
types of trade channels. Such unauthorized use has directly caused Plaintiffs significant harm in
the loss of exclusive rights to use and control the OYP Trademark. *See* Exhibit B.

79.     Such unauthorized use has also caused significant harm to Plaintiffs in the way of
reverse confusion, particularly due to the global reach and considerable powers of the Partner's
media resources. *Id.*

80.     Continued unauthorized use of the OYP Trademark will cause further confusion
amongst consumers as to the origin and authenticity of Plaintiff's Trademark and OYP Services,
and will result in other irreparable harms to Kelly-Brown and OYP, Inc., including but not
limited to the usurpation of future business opportunities.

81.     Upon information and belief, the Defendants' use of Plaintiffs' Trademark, in
connection with the OYP Partnership, has impaired the ability of consumers to accurately
identify the source of the OYP Services.  The strength of Plaintiffs' Trademark; the similarity

19

between Plaintiffs' Trademark and Partners' Counterfeit mark in their entirety as to appearance, sound, and meaning; the proximity of services of both parties; and evidence of actual confusion all illustrate a propensity for consumers to become confused.  *See* Exhibit L.

82.     Plaintiffs' federal registration of the Trademark is conclusive evidence that it should be afforded the utmost protection.  The OYP Trademark has been used in the provision of OYP Services through various venues and mediums for years and has gained a substantial following.

83.     The expansion of Company's service line to include a radio show, lifestyle center, biz conference, personal coaching, retreats, blog and the upcoming e-magazine illustrate the notoriety and strength of the Plaintiffs' Trademark.  *See* Exhibit N.

84.     For years, Plaintiffs have been identifying the OYP Trademark with self-affirming goals such as "lifestyle and wellness content" and "a confident state of mind" that will help one "attain anything (they) want in life."

85.     Upon information and belief, the OYP Partnership advocates on how to "tap into your own strength", "focus your energy, and let your best self shine," "turn your dreams into reality," "live your best life," and achieve other such goals through its services, as evidenced throughout the Counterfeit Campaign.  Not only is the Partners' word-for-word use of the OYP Trademark confusingly similar in sight and sound, but it is used to in connection with confusingly similar services. *See* Exhibit L.

86.     Plaintiffs use the OYP Trademark in connection with speaking engagements, advocacy and educational content both off-line and on-line in the areas of the OYP Services. The Partners have made unauthorized use of Plaintiffs' Trademark in these same service areas throughout the Counterfeit Campaign.  This includes articles and promotions in the Magazine

20

publicizing the Partnership's Own Your Power services while utilizing a Counterfeit OYP Trademark; articles and promotions on Defendants' Websites featuring Own Your Power services branded with a Counterfeit OYP Trademark; and motivational speaking and seminar/workshop content on Defendants' Show, Partnership Websites, and at the OYP Event while making further use of a Counterfeit OYP Trademark. *See* Exhibit L.

87.     Such proximity in the market has and will continue to cause confusion and mistake among consumers as to origin of the Trademark, and continue to cause consumers to assume an erroneous affiliation, connection, or association between Plaintiffs and the Defendants.

88.     As a result of the Partners' use of the OYP Trademark, Kelly-Brown and OYP, Inc. have received numerous e-mails, text messages, tweets, phone calls and other such communications from consumers inquiring about Harpo and its Counterfeit OYP Services. These communications constitute evidence of actual confusion *See* Exhibit B.

89.     Even Google, the nation's premiere search engine, is still confused to this day as to the source of the OYP Trademark and Services.  A search for "Own Your Power" now shows Oprah as the top search result, placing above Company, when prior to September and the Counterfeit Campaign, Company dominated the entire first page of search results. *See* Exhibit O. This is clear evidence of both actual and continuing confusion.

90.     The OYP Partnership's actions constitute irreparable harm by not only violating the Plaintiffs' exclusive rights to the Trademark,  but also the public's right to be free of confusion and the right of Plaintiffs' to control the reputation of the OYP Services.

**The OYP Partnership's Junior Use has Saturated the Market**

91.     Upon information and belief, Harpo and its Partners, through their companies, properties, affiliates, groups, subsidiaries and agents, are some of the most powerful media entities in existence worldwide.  Paid subscription within the United States for the Magazine averages approximately 2.4 million copies year to year according to *Crain's Chicago Business* and the *New York Times*.

92.     Upon information and belief, the launch of the final season of *The Oprah Winfrey Show* was viewed in at least 9 million households just in the United States according to the *Chicago Sun-Times* and boasted over 16 million viewers for its farewell episode.

93.     Upon information and belief, Harpo's Websites, at least one of which has been in operation for over a decade, claim 2 million book club members and www.oprah.com claims 70 million page-views per month.  Harpo's recent webinar series focusing on self-awareness and/or motivation was downloaded or streamed more than 35 million times and its O Magazine Twitter account has at least 108,843 followers, who thus receive a direct and instantaneous transmission of any message submitted by Harpo.

94.     Upon information and belief, Oprah, who has been at the helm of this national Campaign to destroy Plaintiffs' goodwill and confuse consumers as to the source of the OYP Trademark, was recognized by *Forbes Magazine* as the most powerful celebrity in the world.

95.     Upon information and belief, a recent article published in the *Chicago Tribune*, Oprah is described as "the most powerful woman in the history of… everything." *See* Chauncey Mabe, *The power to pick books that matter*, CHICAGO TRIBUNE, Sept. 22, 2010.

96.     A May 2007 article in *Time Magazine* stated that an appearance on *The Oprah Winfrey Show* is the equivalent of millions of dollars in marketing, promotion and campaigning.

Time also stated that "Oprah's power to persuade extends to a multitude of products and services… Search term data indicates that immediately following the appearance on a show, searches for a book, diet or personality will reach the stratosphere." *See* Bill Tancer, *Under the Influence of Oprah*, TIME MAGAZINE, May 09, 2007.

97.     The OYP Partnership's use of Plaintiffs' Trademark has already caused considerable harm to her ability to maintain and promote her business and brand.

98.     A public survey was conducted that demonstrates that a solid majority of consumers in the public believe that Oprah is the source of the services offered in connection with Plaintiffs' OYP Trademark.  This is a testament to the Defendants' commercial strength. *See* Exhibit P.

99.     Upon information and belief, the Partners' multi-tiered campaign, utilizing the extensive reach of television, the internet, and print media, has already reached millions of consumers.  Defendants' media presence has been documented to persuade, influence and command the opinion of its audience.  The OYP Partnership's sheer saturation of the market by Defendants' concerted efforts, Counterfeiting and other campaigns have destroyed Plaintiffs' ability to use the Trademark without reversing the confusion and damage that has already been done.

100.    Upon information and belief, the Harpo Website, the Hearst Website, the O Magazine Website, and Harpo's Facebook and Twitter accounts have been used to advertise, distribute, promote, offer for sale, and sell services bearing Counterfeits of the OYP Trademark.

101.    On March 22, 2011, Plaintiffs' counsel wrote to in-house counsel for Harpo, OWN, Hearst, Wells Fargo, Clinique, and Chico's ("OYP Partnership") concerning the OYP

Partnership's infringement of Plaintiffs' registered OYP Trademark and demanding that such infringement be ceased and desisted. *See* Exhibit R.

102.    On April 20, 2011 Harpo attorney David Fleming, Esq. of Brinks Hoffer Gilson & Lione acknowledged representation of members of the OYP Partnership and refused to direct his clients to halt the infringement of Kelly-Brown's registered OYP Trademark.

103.    To date, Defendants continue to engage in Counterfeit and infringing activity against Plaintiffs. *See* Exhibit L.

## FIRST CLAIM FOR RELIEF
### (Federal Trademark Counterfeiting, 15 U.S.C. § 1114)

104.    Plaintiffs hereby incorporate by reference and reallege the allegations set forth in paragraphs 1-103 above.

105.    Defendants have used spurious designations that are identical with, or substantially indistinguishable from, the Plaintiffs' OYP Trademark on Own Your Power services covered by registration for the Trademark.

106.    Defendants have used these spurious designations knowing they are counterfeit in connection with the advertisement, promotion, sale, offering for sale and distribution of services.

107.    Defendants' use of the OYP Trademark to advertise, promote, offer for sale, distribute and sell Defendants' services was and is without the consent of Plaintiffs.

108.    Defendants' unauthorized use of the OYP Trademark on and in connection with Defendants' advertisement, promotion, sale, offering for sale and distribution of services through print magazines, nationally televised media, and the World Wide Web constitute Defendants' use of the OYP Trademark in commerce.

109.    Defendants' unauthorized use of the OYP Trademark as set forth above is likely to; (a) cause confusion, mistake and deception; (b) cause the public to believe that Defendants'

services are the same as Plaintiffs' OYP Services or that Defendants are authorized, sponsored or approved by Plaintiffs or that Defendants are affiliated, connected or associated with or in some way related to Plaintiffs, or that Plaintiffs are in fact the infringers or counterfeiter of Defendants' trademarks; and (c) result in Defendants unfairly benefiting from Plaintiffs' advertising and promotion and unjustly profiting from their exploitation and usurpation of Plaintiffs' exclusive right to use the OYP Trademark, all to the substantial and irreparable injury of Plaintiffs, the public, and Plaintiffs' Trademark.

110.     Defendants' acts thus constitute trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. §1114.

111.     Defendants' acts are both willful and malicious.

112.     By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) an amount representing Three (3) times Plaintiffs' damages or Defendants' illicit profits, or, at Plaintiffs' election, statutory damages in the amount of up to Two Million Dollars ($2,000,000) for each counterfeit mark per type of services sold as provided by 15 U.S.C. §1117(c); (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. §1117(b), and (c) such other and further relief as the Court may deem just and proper.

113.     Furthermore, Plaintiffs respectfully request that the Court preliminarily and permanently enjoin all Defendants from continued and future counterfeiting and infringement of Plaintiffs' OYP Trademark.

## SECOND CLAIM FOR RELIEF
### (Federal Trademark Infringement, 15 U.S.C. §1114)

114.     Plaintiffs hereby incorporate by reference and reallege the allegations set forth in paragraphs 1-113 above.

115.    Kelly-Brown's registration of the mark OWN YOUR POWER on the principal register of the USPTO constitutes *prima facie* evidence of the validity of the mark, and proof of Plaintiffs' ownership and exclusive right to use the mark in connection with OYP Services. Such registration also serves to provide Defendants with notice of Plaintiffs' exclusive rights.

116.    Plaintiffs' OYP Trademark has acquired substantial goodwill which has been almost irreversibly damaged by the Defendants' ubiquitous campaign of counterfeit and infringing use.

117.    Defendants use of a Counterfeit and infringing OYP Trademark in connection with Defendants' sale, offers of sale, distribution, promotion and advertisement of services through print magazines, nationally televised media, and the World Wide Web constitute Defendants' use of the OYP Trademark in commerce.

118.    Defendants have used the OYP Trademark, knowing it is the exclusive property of Plaintiffs, in connection with Defendants' sale, offers for sale, distribution, promotion and advertisement of their services.

119.    Defendants' activities create the false and misleading impression that Defendants are sanctioned, assigned or authorized by Plaintiffs to use the OYP Trademark to advertise, promote, distribute, offer for sale or sell services under the OYP Trademark when Defendants are not so authorized.

120.    Defendants engage in the aforementioned activities with the intent to confuse and deceive the public into believing that Defendants and the services they publicize, promote and/or sell are affiliated with Plaintiffs, or that Defendants are the true source of OYP Services under the OYP Trademark, when in fact neither is true.

121.     Defendants' use of the OYP Trademark has been without the consent of Plaintiffs; is likely to cause confusion and mistake in the minds of the public and in particular, tends to and does falsely create the impression that the services advertised, promoted, distributed and sold by Defendants are warranted, authorized, sponsored or approved by Plaintiffs when, in fact they are not; and tends to and does falsely create the impression that Kelly-Brown is not the true owner of the exclusive rights to the OYP Trademark and that Plaintiffs are in fact the infringer.

122.     Defendants' unauthorized use of the OYP Trademark has resulted in Defendants unfairly benefiting from Plaintiffs' advertising and promotion, and unjustly profiting from exploiting and usurping Plaintiffs' exclusive right, all to the substantial and irreparable injury of Plaintiffs, the public, and Plaintiffs' Trademark.

123.     Defendants' acts constitute willful trademark infringement in violation of the Lanham Act, 15 U.S.C. §1114.

124.     By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) an amount representing Three (3) times Plaintiffs' damages or Defendants' illicit profits; and (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. §1117.

125.     Furthermore, Plaintiffs  respectfully request that the Court preliminarily and permanently enjoin all Defendants from continued and future counterfeiting and infringement of Plaintiffs' OYP Trademark.

### THIRD CLAIM FOR RELIEF
**(Reverse Confusion, 15 U.S.C. § 1114)**

126.     Plaintiffs hereby incorporate by reference and reallege the allegations set forth in paragraphs 1-125 above.

127.     Plaintiffs' OYP Trademark is a valid, protectable trademark. Kelly-Brown is the owner of the OYP Trademark on the Principal Register of the USPTO.

128.     Defendants used an identical, Counterfeit OYP Trademark in a manner similar to Plaitniffs' OYP Trademark without the consent of the Plaintiffs in a manner that is likely to cause confusion among ordinary purchasers as to the source of the goods.

129.     Defendants' actions are likely to lead the public to conclude, incorrectly, that Plaintiffs' OYP Services originate from Defendants, which will damage both Plaintiffs and the public.

130.     Defendants' unauthorized use of the OYP Trademark in interstate commerce as described above constitute reverse trademark infringement and is likely to cause consumer confusion, mistake, or deception.

131.     As a direct and proximate result of Defendants' reverse trademark infringement, Plaintiff s have suffered and will continue to suffer loss of income, profits and goodwill and Defendants have and will continue to unfairly acquire income, profits and goodwill.

132.     Defendants' acts of reverse trademark infringement will cause further irreparable injury to Plaintiffs if Defendants are not restrained by this Court from further violation of Plaintiffs' rights pursuant to Section 32 of the Lanham Act, 15 U.S. C. § 1114.

133.     By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) an amount representing Three (3) times Plaintiffs' damages or Defendants' illicit profits; and (b) Plaintiffs' costs for corrective advertisement of the expansive Counterfeit Campaign; (c) reasonable attorney's fees, investigative fees, and pre-judgment interest; (d) any other relief the Court deems proper.

## FOURTH CLAIM FOR RELIEF
### (Federal False Designation of Origin and Unfair Competition, 15 U.S.C. §1125(a))

134.     Plaintiffs hereby incorporate by reference and reallege the allegations set forth in paragraphs 1-133 above.

135.     In connection with Defendants' advertisement, promotion, distribution, sales and offers of sale of their services, Defendants have used in commerce, and continue to use in commerce, the OYP Trademark.

136.     In connection with Defendants' advertisement, promotion, distribution, sales and offers of sale of Defendants' Own Your Power services, Defendants have affixed, applied and used false designations of origin and false and misleading descriptions and representations, including the OYP Trademark, which tend falsely to describe the origin, sponsorship, association or approval by Plaintiffs of Defendants' Own Your Power services.

137.     Defendants have used the OYP Trademark with full or constructive knowledge of the falsity of such designations of origin, descriptions and representations, all to the detriment of Plaintiffs.

138.     Defendants' use of The OYP Trademark in connection with Defendants' services constitutes false descriptions and representations tending falsely to describe or represent Defendants and Defendants' services as being either authorized, sponsored, affiliated or associated with Plaintiffs, or alternatively, that Defendants are the true origin of Plaintiffs' OYP Services, and that Plaintiffs are the infringers.

139.     Defendants have used the OYP Trademark with the express intent to cause confusion and mistake, to deceive and mislead the public, to trade upon Plaintiffs' reputation or create the impression that Plaintiffs are trading upon Defendants' reputation, and to improperly appropriate to themselves the valuable trademark rights of Plaintiffs.

140.     Defendants' acts constitute the use in commerce of false designations of origin and false or misleading descriptions or representations, tending to falsely or misleadingly

describe or represent Defendants' services as those of Plaintiffs or vice versa in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

141.    By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) an amount representing Three (3) times Plaintiffs' damage or Defendants' illicit profits; and (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. §1117.

142.    Furthermore, Plaintiffs respectfully request that the Court preliminarily and permanently enjoin all Defendants from continued and future counterfeiting and infringement of Plaintiffs OYP Trademark.

## FIFTH CLAIM FOR RELIEF
### (Contributory Trademark Infringement, 15 U.S.C. § 1114)

143.    Plaintiffs hereby incorporate by reference and reallege the allegations set forth in paragraphs 1-142 above.

144.    Defendants' unauthorized use of the OYP Trademark is likely to cause confusion and mistake in the minds of the public.

145.    Under agency principles, each Defendant acted as an agent of the Partnership and each Defendant monitored and controlled the Counterfeit Campaign while having knowledge of Plaintiffs' valid and protectable OYP Trademark.

146.    Each Defendant had constructive knowledge of the OYP Trademark from Kelly-Brown's federal registration.

147.    Each Defendant was willfully blind to the unauthorized use of Plaintiffs' Trademark as no Partner exercised the care of a reasonably prudent person; this constitutes actual knowledge.

148.    Defendants' unauthorized use of the OYP Trademark has resulted in Defendants unfairly benefiting from Plaintiffs' advertising and promotion, and unjustly profiting from

exploiting and usurping Plaintiffs' exclusive right and confusing the public such that consumers see an affiliation or connection between Plaintiffs and Defendants or believe Plaintiffs are the infringers, all to the substantial and irreparable injury of Plaintiffs, the public, and Plaintiffs' Trademark.

149.     Defendants' actions constitute willful contributory infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. 1114.

150.     By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) an amount representing Three (3) times Plaintiffs' damages or Defendants' illicit profits; and (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. §1117.

151.     Furthermore, Plaintiffs respectfully request that the Court preliminarily and permanently enjoin all Defendants from continued and future counterfeiting and infringement of Plaintiffs' OYP Trademark.

**SIXTH CLAIM FOR RELIEF**
**(Vicarious Trademark Infringement, 15 U.S.C. § 1114)**

152.     Plaintiffs hereby incorporate by reference and reallege the allegations set forth in paragraphs 1-151 above.

153.     Plaintiffs OYP Trademark is a valid and protectable mark. Defendants' unauthorized use of the OYP Trademark is likely to cause confusion and mistake in the minds of the public.

154.     Under agency principles and joint tortfeasor liability, all Defendants are members of an apparent or actual partnership and have authority to bind one another in transactions with third parties and/or exercise joint ownership or control over the infringing OYP Trademark and Own Your Power services.

155.     The Partners continuously supported the OYP Partnership in furtherance and for the benefit of the Counterfeit Campaign through the licensing of each Partner's respective trademarks and other such representations on Campaign material used in connection with Own Your Power services.

156.     The Partners also continuously supported the OYP Partnership in furtherance and for the benefit of the Counterfeit Campaign as each Partner was represented by corporate executives at Campaign events.

157.     Each Partner had the right and ability to control the Own Your Power services.

158.     Each Partner receives a direct financial benefit from the unauthorized use of the OYP Trademark.

159.     Defendants' unauthorized use of the OYP Trademark has resulted in Defendants unfairly benefiting from Plaintiffs' advertising and promotion, and unjustly profiting from exploiting and usurping Plaintiffs' exclusive right and confusing the public such that consumers see an affiliation or connection between Plaintiffs and Defendants or believe Plaintiffs are the infringers, all to the substantial and irreparable injury of Plaintiffs, the public, and Plaintiffs' Trademark.

160.     The Partners' actions constitute vicarious trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

161.     By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) an amount representing Three (3) times Plaintiffs' damages or Defendants' illicit profits; and (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. §1117.

162.     Furthermore, Plaintiffs respectfully request that the Court preliminarily and permanently enjoin all Defendants from continued and future counterfeiting and infringement of Plaintiffs' OYP Trademark.

**SEVENTH CLAIM FOR RELIEF**
**(Trafficking in Counterfeit Marks, N.J.S.A. 56:3-13.16)**

163.     Plaintiffs hereby incorporate by reference and reallege the allegations set forth in paragraphs 1-162 above.

164.     Defendants deliberately and intentionally used without Plaintiffs' consent, copies and colorable imitations of the OYP Trademark in connection with the sale and advertisement of services within the State of New Jersey, with the intention to deceive, or to assist in deceiving the public as to the source, sponsorship and origin of the services or with the intention to defraud, or to assist in defrauding Plaintiffs, constituting trafficking or attempting to traffic in counterfeit marks in violation of N.J.S.A. 56:3-13.16.

165.     Defendants' actions as alleged herein have caused and will continue to cause irreparable damage and injury to Plaintiffs if not enjoined by this Court.  Plaintiffs respectfully request that the Court preliminarily and permanently enjoin all Defendants from continued trafficking in Counterfeit OYP Trademarks.

166.     By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) an amount representing Three (3) times Plaintiffs damage or Defendants' illicit profits; and (b) reasonable attorney's fees, investigative fees, pre-judgment interest, and any provisional or equitable remedy available under the federal Trademark law.

## EIGHTH CLAIM FOR RELIEF
### (Common Law Misappropriation)

167.     Plaintiffs hereby incorporate by reference and reallege the allegations set forth in paragraphs 1-166 above.

168.     Defendants have misappropriated Plaintiffs' property interest in the registration of the OYP Trademark, the goodwill, and in Plaintiffs' business model operated through OYP, Inc.

169.     Defendants are familiar with trademark law and the practice of registering marks with the USPTO, particularly before launching media campaigns using those marks.

170.     Defendants performed a trademark search on the USPTO registry for the registration of "Own Your Power" before launching their competing OYP campaign.

171.     Plaintiffs have spent an innumerable amount of energy, time and money in expanding Company into new markets and new media and making Company commercially profitable.

172.     Defendants have benefited from the use of the valuable goodwill, reputation, and business property of Plaintiffs by:

(A) selecting the same letters and the same words, and using them in the same combination, "Own Your Power," to market, advertise, and identify themselves as the source for the same motivational communications services in the areas of self-awareness, self-realization, and entrepreneurship services as Plaintiffs; and

(B) free-riding on Plaintiffs' advertising for Plaintiffs' Own Your Power® conference held on September 18, 2010 in New York City by hosting a competing OYP Event on September 16, 2010 in New York City.

173.     Defendants' acts thus constitute misappropriation in violation of federal common law misappropriation.

174.     As a direct and proximate result of Defendants' acts, Defendants have been unjustly enriched and Plaintiffs have been injured and are entitled to recover damages in an amount to be determined at trial.

175.     Furthermore, Plaintiffs respectfully request that the Court preliminarily and permanently enjoin all Defendants from continued and future misappropriation of Company's OYP Trademark and business model.

**NINTH CLAIM FOR RELIEF**
**(Unfair Competition, N.J.S.A § 56:4-1)**

176.     Plaintiffs hereby incorporate by reference and reallege the allegations set forth in paragraphs 1-175 above.

177.     Defendants have appropriated the OYP Trademark by using such mark in connection with their advertisement, promotion, distribution, sales and offers of sale of Defendants' services.

178.     Defendants have also appropriated the OYP Trademark with full or constructive knowledge of the falsity of such designations of origin, descriptions and representations, all to Plaintiffs' detriment.

179.     By offering analogous services to Plaintiffs' OYP Services, Defendants' appropriation of the OYP Trademark and Defendants' ubiquitous presence have inevitably resulted in Defendants being recognized as the source of the OYP Trademark.

180.     Defendants have also appropriated the OYP Trademark with the express intent to trade upon the reputation of Plaintiffs' or to create the impression that Plaintiffs are trading upon Defendants' reputation, and to improperly and unfairly appropriate to themselves the valuable trademark rights of Plaintiffs.

181.    Defendants have capitalized on Plaintiffs' resources and investment by appropriating the OYP Trademark and, as a result, have unjustly obtained success and monetary gain through no work of their own.

182.    Defendants have used a combination of elements that is likely to cause mistake or to deceive people as to Defendants' affiliation, connection, or association with Plaintiffs' OYP Services in violation of N.J.S.A. 56:4-1.

183.    Plaintiffs have been, and will continue to be, damaged by Defendants' ongoing activities and conduct. Defendants have not cooperated with ceasing to appropriate the OYP Trademark in the immediate future.

184.    Defendants have unfairly profited from appropriating the OYP Trademark and unless such conduct is enjoined, Plaintiffs' reputation and goodwill will continue to suffer irreparable injury.

185.    Furthermore, Plaintiffs respectfully request that the Court preliminarily and permanently enjoin all Defendants from continued and future unfair competition against Company.

186.    As a direct and proximate cause of Defendants' acts, Plaintiffs have been injured and are entitled to recover treble damages pursuant to NJ Stat. 56:4-2, in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement)

187.    Plaintiffs hereby incorporate by reference and reallege the allegations set forth in paragraphs 1-186 above.

188.    Plaintiffs' registration of the mark OWN YOUR POWER on the principal register of the USPTO constitutes *prima facie* evidence of the validity of the mark, and proof of

Plaintiffs' ownership and exclusive right to use the mark in connection with her and her company's services. Such registration also serves to provide Defendants with notice of Plaintiffs' exclusive rights.

189.    Plaintiffs' OYP Trademark has acquired substantial goodwill which has been almost irreversibly damaged by the Defendants' ubiquitous campaign of counterfeit and infringing use.

190.    Defendants' activities constitute Defendants' use in commerce of the OYP Trademark. Defendants use of the OYP Trademark in connection with Defendants' sale, offers of sale, distribution, promotion and advertisement of their services bearing infringements and counterfeits of the OYP Trademark.

191.    Defendants have used the OYP Trademark without authorization, knowing it is the exclusive property of Plaintiffs, in connection with Defendants' sale, offers for sale, distribution, promotion and advertisement of their services.

192.    Defendants' activities create the false and misleading impression that Defendants are sanctioned, assigned or authorized by Plaintiffs to use the OYP Trademark to advertise, promote, distribute, offer for sale or sell services under the OYP Trademark when Defendants are not so authorized.

193.    Defendants engage in the aforementioned activity with the intent to confuse and deceive the public into believing that Defendants and the services they sell are affiliated with Plaintiffs, or that Defendants are the true source of OYP services under the OYP Trademark, when in fact neither is true.

194.    Defendants' use of the OYP Trademark has been without the consent of Plaintiffs, is likely to cause confusion and mistake in the minds of the public and, in particular, tends to and

does falsely create the impression that the services advertised, promoted, distributed and sold by Defendants are warranted, authorized, sponsored or approved by Plaintiffs when, in fact they are not; and tends to and does falsely create the impression that Plaintiffs are not the true owner of the exclusive rights to the OYP Trademark and that Plaintiffs are in fact the infringer.

195.     Defendants' unauthorized use of the OYP Trademark has resulted in Defendants unfairly benefiting from Plaintiffs' advertising and promotion, and unjustly profiting from exploitation and diminishment of Plaintiffs' exclusive right to use her registered mark, all to the substantial and irreparable injury of Plaintiffs, the public, and Plaintiffs' trademark.

196.     Defendants' acts constitute wanton and willful common law trademark infringement disregarding the rights of Plaintiffs.

197.     As a direct and proximate result thereof, Plaintiffs suffered and continue to suffer damages.

198.     Plaintiffs' will continue to suffer damages, including irreparable harm to the goodwill in and to the OYP Trademark, unless and until Defendants are restrained from all unauthorized use of a Counterfeit and infringing Trademark.

199.     By reason of the foregoing, Defendants are liable to Plaintiffs for:  (a) disgorgement of all gross monies received by Defendants in connection with their infringement of Plaintiffs' rights; (b) reasonable attorney's fees, investigative fees and pre-judgment interest; (c) punitive damages; and (d) such other and further relief as is necessary, just and/or proper.

200.     Furthermore, Plaintiffs respectfully requests that the Court preliminarily and permanently enjoin all Defendants from continued future infringement of Plaintiffs' OYP Trademark.

### ELEVENTH CLAIM FOR RELIEF
**(Common Law Civil Conspiracy)**

201.     Plaintiffs hereby incorporate by reference and reallege the allegations set forth in paragraphs 1-200 above.

202.     Upon information and belief, long after Plaintiffs' adoption and use of the OYP Trademark in connection with Company's OYP Services and federal registration of the OYP Trademark, Defendants entered into an agreement under which said Defendants, acting in concert, agreed to willfully or knowingly begin selling, offering for sale, distributing, promoting and advertising services in interstate commerce bearing counterfeits and infringements of the OYP Trademark as the mark appears in connection with Plaintiffs' OYP Services

203.     The acts of Defendants, and each of them, were in furtherance of a conspiracy to violate a legal duty for their own personal financial gain.

204.     Defendants had an independent duty to Plaintiffs not to engage in conduct involving a conspiracy to violate a legal duty in furtherance of Defendants' financial gain.

205.     Defendants at all times did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and agreement alleged above.

206.     As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiffs have been damaged in a sum according to proof and Defendants are additionally liable for punitive damages, attorney's fees, costs, and interest according to proof.

### TWELFTH CLAIM FOR RELIEF
**(Tortious Interference with Prospective Business and/or Economic Advantage)**

207.     Plaintiffs hereby incorporate by reference and reallege the allegations set forth in paragraphs 1-206 above.

208.    Plaintiffs have a reasonable expectation of prospective economic advantage associated with the federally granted, exclusive use and exploitation of the OYP Trademark.

209.    Defendants have intentionally and inappropriately interfered with Plaintiffs' reasonable expectation of prospective economic advantage.

210.    Defendants used the OYP Trademark with full or constructive knowledge of the falsity of such designations of origin, descriptions and representations, all to the detriment of Plaintiffs.

211.    By using the OYP Trademark in connection with Defendants' advertisement, promotion, distribution, sales and offers of sale of their Counterfeit Campaign, Defendants have affixed, applied and used false designations of origin and false and misleading descriptions and representations which tend to falsely describe the origin, sponsorship, association or approval by Plaintiffs.

212.    By using the OYP trademark in connection with Defendants' advertisement, promotion, distribution, sales and offers of sale of the Counterfeit Campaign, Defendants have benefited from the goodwill associated with the OYP Trademark that is exclusive to Plaintiffs.

213.    Furthermore, by holding the OYP Event two days before and in the same city as Plaintiffs' Own Your Power conference, Defendants intentionally and inappropriately interfered with Plaintiffs' prospective economic advantage.

214.    But for the Defendants tortious conduct and wrongful interference, Plaintiffs would have received and continued to receive some or all the anticipated economic advantage and gained clientele.

215.    As a result, Defendants have been unjustly enriched by using the goodwill associated with the OYP Trademark while depriving Plaintiffs of gaining a reasonable expected economic advantage which is exclusive to Plaintiffs.

216.    By reason of the foregoing, Plaintiffs have suffered substantial damages. Furthermore, Plaintiffs respectfully request that (a) a finding be entered that Defendant tortiously interfered with Plaintiffs' prospective economic advantage; (b) the Plaintiffs be awarded punitive damages for Defendant's willful or grossly negligent actions which exhibited a wanton disregard for the trademark rights; (c) that Plaintiffs be awarded costs of this suit; (d) that Defendants be preliminarily and permanently enjoined from the tortiously interfering conduct; and that Plaintiffs be awarded such other relief as this Court may deem just and proper.

**THIRTEENTH CLAIM FOR RELIEF**
**(Consumer Fraud Act, N.J.S.A. 56:8-2)**

217.    Plaintiffs hereby incorporate by reference and reallege the allegations set forth in paragraphs 1-216 above.

218.    Defendants have used and employed unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and the knowing, concealment, suppression, or omission of material facts, with intent that others would rely on upon such concealment, suppression or omission,  in connection with the sale or advertisement of any merchandise, in violation of N.J.S.A. 56:8-2.

219.    Defendants' advertisements, sales acts, distributions, and practices in furtherance and for the benefit of the Counterfeit Campaign and the OYP Partnership violate N.J.S.A. 56:8-2. This includes, but is not limited to the Defendants knowing concealment, suppression, and/or omitting of the material fact that Defendants are not the owners of the OYP Trademark and the

associated OYP Services, with intent that the public rely on the concealment, suppression, and/or omission in connection with the sale or distribution and advertisement of those Services;

220.    Defendants are aware of unlawful conduct in their Counterfeit Campaign.

221.    Defendants are the proximate cause of Plaintiffs' injuries.

222.    Defendants' acts, whether or not they intended the public to rely on their acts, constitute an unconscionable commercial practice, deception, fraud, falsity, or misrepresentation in violation of New Jersey's Consumer Fraud Act.

223.    By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) an amount representing Three (3) times Plaintiffs' damages as provided by N.J.S.A. 56:8-19; (b) reasonable attorney's fees, filling fees and reasonable costs of suit pursuant to N.J.S.A. 56:8-19; and (c) such other and further relief as the Court may deem just and proper.

224.    Furthermore, Plaintiffs respectfully request that the Court preliminarily and permanently enjoin all Defendants from continued and future misappropriation of Plaintiffs' OYP Trademark and business model.

## CERTIFICATION PURSUANT TO L.CIV.R. 11.2

Plaintiffs by their undersigned attorneys hereby certify in accordance with the requirements of L.Civ.R. 11.2 that the matters in controversy in the within litigation are not, to the best of their knowledge and belief, the subject of any other pending action or arbitration proceeding, nor are any such actions or arbitration proceedings contemplated. Plaintiffs by their undersigned attorneys further certifies that they presently have no knowledge of the names of other parties who should be but have not been joined in the within action.

Respectfully submitted,

Dated: Hillsborough, New Jersey             THE PLK LAW GROUP, P.C.
            July 28, 2011

/s/ Patricia Lawrence-Kolaras
BY: PATRICIA LAWRENCE-KOLARAS, ESQ
284 U.S. Route 206, Bldg. E, Suite 10
Hillsborough, NJ 08844
Attorneys for Plaintiffs
Simone Kelly-Brown and
Own Your Power Communications