UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x
SIMONE KELLY-BROWN and  :
OWN YOUR POWER  :
COMMUNICATIONS, INC.  :
    :
               Plaintiffs,  :
    :
   - against -  :
    :
OPRAH WINFREY, et al.,  :
    :
               Defendants.  :
------------------------------------------------------ x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 6, 2012

11 Civ. 7875 (PAC)

OPINION AND ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

       Plaintiffs Simone Kelly-Brown and Own Your Power Communications, Inc. ("Plaintiffs") bring this action against Oprah Winfrey ("Oprah"), Harpo Productions, Inc., Harpo, Inc., Hearst Corporation, Hearst Communications, Inc., Wells Fargo & Company, Clinique Laboratories, LLC, Chico's FAS, Inc. Estee Lauder Companies, Inc, ABC Companies (1-100), and John Does (1-100) (collectively, the "Defendants"), under sections 32 and 43 of the Lanham Act, New Jersey State law, and common law. Plaintiffs allege that Defendants unlawfully used Plaintiffs' trademark phrase "Own Your Power" (the "Phrase") on the cover of the O Magazine and in promoting a related O Magazine event.

       Defendants move to dismiss Plaintiffs' complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court dismisses Plaintiffs' federal claims and declines to exercise supplemental jurisdiction over the state law and common law claims.

## BACKGROUND

Since 1996, Plaintiffs have provided "a personal brand of self-awareness and motivational communications services nationally." (Compl. ¶ 2.) On May 27, 2008, Plaintiffs registered the "Own Your Power" trademark with the United States Patent and Trademark Office. (Id. Ex. A.)

On September 13, 2010, the October 2010 O Magazine (the "Magazine") was distributed. (Id. ¶ 24.) The cover of the Magazine depicted, inter alia, the trademark "O," followed by "The Oprah Magazine," a photograph of Oprah, and the headline Phrase "Own Your Power," which was surrounded by the phrases: "Unlock Your Inner Superstar"; "The 2010 O Power List"; "Tap Into Your Strength"; "Focus Your Energy"; and "Let Your Best Self Shine." (Id. Ex. D.)

The Magazine promoted an "Own Your Power event" (the "Event"), to be held on September 16, 2010, which was described as "a lively panel discussion about power featuring some of the notables from this issue's Power List." (Id. ¶¶ 11, 27; Ex. E.) The Event was promoted as being sponsored "In Partnership With" Chico's, Wells Fargo, and Clinique. (Id. ¶ 27; Ex. E.)

The Magazine and/or the Event was thereafter referred to on one episode of The Oprah Winfrey Show; in the December 2010 edition of the O Magazine; on affiliated websites, including www.oprah.com and www.omagazine.info; and on Harpo and Hearst Communications' Twitter and Facebook accounts. (Id. ¶¶ 11, 44, 73, 74; Exs. E, K, M.)

On July 28, 2011, Plaintiffs filed this action in the District of New Jersey, asserting a barrage of claims under sections 32 and 43 of the Lanham Act (15 U.S.C. §§ 1114, 1125), for: trademark counterfeiting; trademark infringement; reverse confusion; false designation of

2

origin and unfair competition; contributory trademark infringement; and vicarious trademark infringement.  Plaintiffs also assert claims under New Jersey State law and common law for: trafficking in counterfeit marks; common law misappropriation; unfair competition; common law trademark infringement; common law civil conspiracy; interference with prospective business and/or economic advantage; and a violation of the consumer fraud act.

On September 23, 2011, Defendants moved to transfer the case to the Southern District of New York, or, in the alternative, to dismiss the case.  On November 3, 2011, District Court Judge Stanley R. Chesler granted Defendants' motion to transfer, and the matter was transferred to this Court.  On January 13, 2012, Defendants renewed their motion to dismiss before this Court.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "[T]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice."  Id.

In ruling on this motion, the Court considers the complaint and the exhibits attached to the complaint, which are integral to the complaint and which Plaintiff clearly relied upon in drafting the complaint.  See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).

**DISCUSSION**

Defendants argue that Plaintiffs' claims should be dismissed because: (1) Plaintiffs failed to allege that any defendant other than Hearst Communications was involved in the alleged infringement; (2) the First Amendment protects Defendants' speech; (3) Defendants did not make a trademark use of the Phrase; (4) Defendants' use of the Phrase constitutes fair use; (5) Plaintiffs have not stated a claim for trademark counterfeiting; and (6) the state and common law claims are purely derivative.

The Court first addresses Plaintiffs' Lanham Act claims since they are the critical components in the Plaintiffs' complaint.

**A. Plaintiffs' Lanham Act Claims**

Plaintiffs assert claims under the sections 32 and 43 of the Lanham Act for: trademark counterfeiting; trademark infringement; reverse confusion; false designation of origin and unfair competition; contributory trademark infringement; and vicarious trademark infringement. Defendants argue, inter alia, the fair use defense bars Plaintiffs' claims.

1. *Fair Use*[1]

The fair use defense allows use of protected marks in descriptive ways, provided it does not identify the source or origin of the goods. The Lanham Act codifies this defense: "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . which is descriptive of and used fairly and in good faith only to describe goods or services of [a] party, or their geographic origin." 15 U.S.C. § 1115(b)(4).[2] The fair use defense

---

[1] A court can consider whether the fair use defense applies on a motion to dismiss. See e.g., Arnold v. ABC, Inc., No. 06 Civ. 1747, 2007 WL 210330 (S.D.N.Y. Jan. 29, 2007) (granting motion to dismiss on fair use grounds).

[2] While fair use is an express defense "to claims under 15 U.S.C. § 1114, [ ] courts have extended it to claims under 15 U.S.C. § 1125 as well." Arnold, 2007 WL 210330, at *2 n.5 (citing cases).

requires that the Defendants show that their use of the Phrase was "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 64 (2d Cir. 2000).

      a. Non-Trademark Use

A trademark use involves an indication of the source or origin of the goods. See Dessert Beauty, Inc. v. Fox, 568 F. Supp. 2d 416, 424 (S.D.N.Y. 2008). A "non-trademark use of [a] phrase" is evident where "the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks." Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co., 125 F.3d 28, 30-31 (2d Cir. 1997). The fact that a phrase is used in a descriptive sense, as analyzed below, also suggests a non-trademark use. See id.

Defendants argue that they used the Phrase in its descriptive sense and not to indicate the source or origin of the goods (the Magazine and the Event). The source of the Magazine was clearly identified by the prominent, and distinctive "O" trademark followed by "The Oprah Magazine." See id.; see also Packman v. Chicago Tribune Co., 267 F.3d 628, 639 (7th Cir. 2001) ("the Tribune's distinctive masthead, which appears prominently on the front page . . . identifies the source of the product.") The fact that Oprah herself is pictured on the cover of the Magazine further identifies the source of the goods. See Arnold v. ABC, Inc., No. 06 Civ. 1747, 2007 WL 210330, at *3 (S.D.N.Y. Jan. 29, 2007) (holding that defendants did not make a trademark use of the phrase "what's your problem?" when the "identity of the show" was "clearly evidenced by the prominent display of the show's title, ABC's own famous and recognizable trademark, and large photos of the show's three stars.") The prominent display of Magazine's trademark "O" also identifies the Phrase as a headline that, along with the other text on the cover, describes the contents of the Magazine. See Packman, 267 F.3d at 639 ("The

tribune's use of its well-known masthead also identifies the phrase as a newspaper headline . . . and not as a Tribune trademark.")

The O Magazine was also identified as the source of the Event, and the Phrase served to describe the Event's theme. Promotional materials identified the Event as: "O, The Oprah Magazine['s] . . . first-ever own your power event in celebration of the October issue cover story," which involved "a lively panel discussion about power featuring some notables from this issue's Power list." (Compl. Ex. E.) Since the promotional materials clearly identified The O Magazine as the source of the Event, the Defendants' use of the Phrase in relation to the Event was not a trademark use. See Arnold, 2007 WL 210330, at *3 (holding that defendants' use of a phrase was not a trademark use where "[o]n both the advertisements and the website, the identity of the show" was clearly evident).

Plaintiffs argue, however, that Defendants used the Phrase as a trademark, as demonstrated by the fact that: (1) Defendants filed trademark registrations for other phrases; and (2) Defendants "combined their trademarked 'O'" with the Own Your Power trademark to create a "single source identifier." (Pl. Opp. 11-12.) Plaintiffs' first argument is untenable. The fact that Defendants registered other marks, even other phrases, does not mean that their use of any other particular phrase necessarily constitutes a trademark use. To the contrary, the fact that the Defendants obtained and prominently displayed their own trademark on the same page as the Phrase is evidence of non-trademark use. See Cosmetically Sealed, 125 F.3d at 30.

Plaintiffs' second argument is also without merit, because the fact that Plaintiffs' and Defendants' marks are used in conjunction with each other does not alter the above analysis, where defendants' trademark or reputation is well known, clearly displayed, and used to indicator of the source of the product. See B & L Sales Assocs. v. H. Daroff & Sons, Inc., 421

F.2d 352, 353 (2d Cir. 1970) (holding that the trademark phrase "Come on Strong" was not used as a source identifier in the advertisement "Come on Strong with Botany 500," because given "defendant's reputation as a well-known manufacturer of [Botany 500] men's suits, it is inconceivable that these [advertising] materials were intended to attribute the source of the goods to anyone other than defendant.")[3]  As discussed above, Defendants' prominent display of their trademark, along with a photograph of Oprah, clearly identified the source of the products.  Accordingly, Defendants' use of the Phrase, even in conjunction with their trademark, did not constitute a trademark use.  See id.; Arnold, 2007 WL 210330, at *3.

Defendants argue that "trademark use is a threshold requirement for a Lanham Act claim" and, therefore, their non-trademark use alone warrants dismissal.  The Second Circuit has recognized that "'use' must be decided as a threshold matter," in analyzing trademark infringement claims, because "no such activity is actionable under the Lanham Act absent the 'use' of a trademark."  1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 412 (2d Cir. 2005).  The Court finds that Defendants' use of the phrase was other than as a mark.  But there are other reasons why the Lanham Act claims fail, and the Court addresses each of them in turn.

---

[3] The cases Plaintiffs cite from the Seventh Circuit are inapposite.  In Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947 (7th Cir. 1992), the Seventh Circuit found that "Thirst Aid" as used in the advertisement "Gatorade is Thirst Aid" was used in a trademark sense because "'Thirst Aid' appeared more prominently than 'Gatorade' in advertisements and [ ] the rhyming quality of the two words created a 'memorable slogan . . . uniquely associated' with defendant's 'Gatorade' product."  Packman, 267 F.3d at 640 (quoting Sands, Taylor & Wood, 978 F.2d at 954).  In Packman v. Chicago Tribune Co, the court distinguished its holding in Sands, Taylor & Wood from a situation involving a newspaper's use of a trademark phrase in a headline, which the Seventh Circuit held was not a trademark use, because the masthead, not the headline, fostered the association between the product and the source, and the combined masthead and headline did not create a memorable slogan (even though the headline itself was a slogan).  267 F.3d at 640.  Here, the combined marks did not create a memorable slogan, and the Defendants' marks served to foster an association between the products (the Magazine and the Event) and the source (the Defendants).

b.  Descriptive Use

The Lanham Act requirement that the mark be used "to describe the goods," 15 U.S.C. § 1115(b)(4), "has not been narrowly confined," but rather "permits use of words or images that are used . . . in their 'descriptive sense.'" Cosmetically Sealed, 125 F.3d at 30 (quoting Car-Freshener Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267, 269 (2d Cir. 1995)).  A mark is descriptive where "used to describe the ingredients, quality or composition of a product, not the source of the product." JA Apparel Corp. v. Abbound, No. 07 Civ. 7787 (THK), 2008 WL 2329533, at *19 (S.D.N.Y. June 5, 2008) (internal quotation omitted); see also Car-Freshener, 70 F.3d at 270 (holding that defendant's use of a pine-tree shape was not as a mark, but rather to describe: (1) the car freshener's pine sent; and (2) the Christmas season—the time of year that defendant sold its product).  Additionally, a mark is used in a descriptive sense where it "describes an action the allege infringer hopes consumer will make of its product." EMI Catalogue, 228 F.3d at 64-65.  A "descriptive use is often evident in the manner of use, such as the 'physical nature of the use in terms of size, location, and other characteristics in comparison with the appearance and other descriptive matter or other trademarks." Dessert Beauty, 568 F. Supp. 2d at 426 (quoting EMI Catalogue, 228 F.3d at 65).

In Cosmetically Sealed, the Second Circuit held that even though "the words 'Seal it with a Kiss' do not describe a characteristic of defendants' [lipstick], they surely are used in their 'descriptive sense'—to describe an action that the sellers hope consumers will take, using their product." 125 F.3d at 30.  Here, the Phrase "Own Your Power" describes both the Magazine's contents, and an action that Defendants hope that O Magazine readers will take, after reading the Magazine.  See id.; see also B&L Sales Assocs., 421 F.2d at 254 (holding that it "is quite obvious that the phrase 'Come on Strong' was intended only to describe the manner

in which [defendant's] clothing would assist the purchaser in projecting a commanding, confident, 'strong' image to his friends and admirers, and no intent to use the phrase in a trademark sense can be inferred from these promotional materials."). Likewise, the Phrase describes the theme of the Event, explaining both that (1) the Event is "in celebration of the October issue cover story"; and (2) involve a "discussion about power featuring some notables from this issue's Power list." (Compl. Ex. E (the Event's promotional materials).)

Plaintiffs' arguments to the contrary—that the Phrase does not describe the contents of the Magazine; that it is "vastly more prominent and visually distinctive" from other text on the cover—are to no avail. The manner in which the Defendants used the Phrase on the cover of the Magazine demonstrates that it served in a descriptive capacity. The Magazine blocks off the trademark "O" in a red box on the upper left hand corner. The Phrase, however, is not blocked off, but rather is placed in the middle of text encouraging readers to: "Unlock Your Inner Superstar," "Tap Into Your Strength"; "Focus Your Energy"; and "Let Your Best Self Shine." (Compl. Ex. D.) While Plaintiffs' Phrase is more prominently displayed than these other phrases, that is because it capsulizes the other phrases, and thus the Magazine's contents. Accordingly, the Court finds the Defendants used the Phrase in a descriptive sense.

    c.  <u>Bad Faith</u>

As to bad faith, a court considers whether a "defendant in adopting its mark intended to capitalize on plaintiff's good will;" and "the overall context in which the mark appear and the totality of factors that could cause consumer confusion." <u>EMI Catalogue</u>, 228 F.3d at 66.

Plaintiffs' argue that Defendants' bad faith is evidenced by the fact that they knew of and failed to remove the alleged infringing mark. (Pl. Opp. 13-14.) Failure to completely abandon use of a trademark, however, even after receipt of a cease and desist letter, standing

alone "'is insufficient to support an allegation of bad faith' as a matter of law." Dessert Beauty, 568 F. Supp. 2d at 426 (quoting Something Old, Something New, Inc. v. QVC, Inc., No. 98 Civ. 7450(SAS),1999 WL 1125063, at *7 (S.D.N.Y. Dec. 8, 1999). Similarly, failure to conduct an official trademark search, or consult with counsel does not satisfy the bad faith requirement. See Savin Corp. v. Savin Grp., 391 F.3d 439, 460 (2d Cir. 2004); Car-Freshener, 70 F.3d at 270 (Defendant "was fully entitled to use a pine-tree shape descriptively notwithstanding [plaintiff's] use of a tree shape as a mark, the fact that it did so without consulting counsel has no tendency to show bad faith.")

      Plaintiffs have not alleged facts to plausibly suggest that Defendants intended to capitalize on Plaintiffs' good will or that there was a likelihood of consumer confusion. The appearance of the Phrase as used by Plaintiffs and Defendants, and the context in which the Phrase is used differs significantly. Plaintiffs depict the Phrase in all lowercase blue letters, which are not italicized, followed by a trademark; Defendants depict the Phrase in italics, in white ink on the Magazine and black and pink ink for the Event, mixing capital and lower case letters, and printed in a noticeably different font. (Compare Compl. Exs. D, E, with Ex. N.) Plaintiffs use the Phrase, inter alia, to sell "motivational communication services" including an annual "Retreat and other conferences." (Compl. ¶¶ 17-21.) Defendants used the Phrase, inter alia, to sell a print magazine. Moreover, as discussed above, Defendants used the Phrase in a descriptive manner, while prominently displaying the trademark "O" and photographs of Oprah, which attributes the source of the products to the Defendants. Indeed, "the display of defendant's own name or trademark in conjunction with the mark it allegedly infringes is evidence of good faith." EMI Catalogue, 228 F.3d at 67.

Furthermore, "[s]o long as the defendants in good faith are using the phrase in its descriptive sense and prominently identifying the product with the defendants' marks, the defendants incurs no liability simply because the materials containing the descriptive phrase are so widely disseminated as to form some degree of association in the public's mind between the phrase and the product." Cosmetically Sealed, 125 F.3d at 31. That "is a risk the plaintiff took in selecting as its mark a phrase that was not only descriptive but readily recognized by consumers." Id.

The Court finds that Defendants used the Phrase in good faith. Accordingly, the Defendants' use of the Phrase constitutes fair use under 15 U.S.C. § 1115(b).

### 2. *Trademark Infringement and False Designation of Origin*

Fair use is a defense to federal trademark infringement and false designation of origin claims under 15 U.S.C. §§ 1114 and 1125. See Car-Freshner Corp., 70 F.3d 268 (affirming dismissal of trademark infringement claims and false designation of origin claims on fair use grounds). Having found Defendants' use of the Phrase constitutes fair use, the Court dismisses Plaintiffs' trademark infringement and false designation of origin claims (Counts Two and Four).

### 3. *Reverse Confusion*

Plaintiffs' claim for "reverse confusion" does not present "a new claim, but rather an alternative theory of liability for [trademark] infringement under the Lanham Act." Birmingham v. Mizuno USA, Inc., No. 5:09–CV–0566 (GTS/GHL), 2011 WL 1299356, at *17 n.20 (N.D.N.Y. Mar. 31, 2011); see also Fitzpatrick v. Sony-BMG Music Entm't, Inc., No. 07 Civ. 2933, 2010 WL 3377800, at *1 n.3 (S.D.N.Y. Aug. 24, 2010) (describing reverse confusion as a "theory of trademark infringement"); Trouble v. Wet Seal, Inc., 179 F.Supp.2d

291, 296 (S.D.N.Y.2001) (noting that "allegations of forward confusion and reverse confusion do not form distinct claims—they are alternative theories that can be used separately or together in a trademark infringement claim under the Lanham Act").  Since Plaintiffs' trademark infringement claim fails, its reverse confusion theory of liability fails as well.

Moreover, even without the fair use defense, a "reverse confusion" theory of trademark infringement liability would still fail.  As stated above a trademark "'use' must be decided as a threshold matter [in a trademark infringement claim] because, while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark."  1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 412 (2d Cir. 2005).  Plaintiffs failed to allege Defendants made a trademark use of the Phrase, as discussed above.  Accordingly, the Court would not have occasion to reach the 'confusion' prong—reverse or forward—of a trademark liability claim because Plaintiffs' allegations of trademark use are inadequate.  See id. at 406 (since defendant did "not 'use' [plaintiff's] trademarks, we need not and do not address the issue of likelihood of confusion").

Having failed to state a claim for trademark infringement, Plaintiffs' reverse confusion claim fails, and Count Three is dismissed.

   4.   *Contributory and Vicarious Liability*

Plaintiffs seek to hold each Defendant liable for contributory and vicarious liability.  Both contributory trademark infringement and vicarious trademark infringement are predicated upon the existence of a direct infringement.  See Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 103 (2d Cir. 2010)(describing "contributory trademark infringement" as "culpably facilitating the infringing conduct"); Gucci Am., Inc. v. Frontline Processing Corp., 721 F.Supp.2d 228,

247 (S.D.N.Y.2010)(holding that vicarious trademark infringement "requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." (quoting Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc., 955 F.2d 1143, 1150 (7th Cir. 1992)). Since Plaintiffs have not adequately alleged that any Defendant committed direct trademark infringement, as discussed above, their contributory liability and vicarious liability claims, under 15 U.S.C. §§ 1114 and 1125, fail.[4]

Similarly, Plaintiffs' argument that each Defendant is liable based on an alleged partnership or agency relationship fails because there is no predicate Lanham Act violation to attribute to any purported partner or agent of any Defendant. In any event, Plaintiffs failed to adequately allege that a partnership or agency relationship existed between the Defendants.

    a. <u>Partnership</u>

While the Event was promoted as "In Partnership" with Chico's, Wells Fargo, and Clinique, simply "calling an organization a partnership does not make it one." <u>Kidz Cloz, Inc. v. Officially For Kids, Inc.</u>, 320 F. Supp. 2d 164, 174 (S.D.N.Y. 2004) (quoting <u>Kosower v. Gutowitz</u>, No. 00 Civ. 9011, 2001 WL 1488440, *6, (S.D.N.Y. Nov. 21, 2001).) Rather, "[t]o demonstrate the existence of a partnership, a plaintiff must prove four elements: (1) the parties' sharing of profits and losses; (2) the parties' joint control and management of the business; (3) the contribution by each party of property, financial resources, effort, skill, or knowledge to the

---

[4] Moreover, Plaintiffs' claims against Estee Lauder fail on the additional ground that"[a]s a general rule, 'a parent corporation . . . is not liable for the acts of its subsidiaries.'" <u>In re IndyMac Mortgage-Backed Sec. Litig.</u>, 718 F.Supp.2d 495, 508 & n.97 (S.D.N.Y. 2010) (quoting <u>United States v. Bestfoods</u>, 524 U.S. 51, 61 (1998)). Plaintiffs only allegation against Estee Lauder is that it wholly-owned defendant Clinique, which is insufficient to state a claim. (<u>See</u> Compl. ¶ 6.)

business; and (4) the parties' intention to be partners." Id. at 171.  Plaintiffs' conclusory allegations are insufficient to show that the Defendants shared profits and losses or exercised joint control and management over the Magazine and Event.  While Plaintiffs claim that the Defendants used "collective efforts," "[m]any companies seek to cooperate with each other and reach agreements to implement such cooperation.  However, most of these agreements do not create [partnerships]."  N. Am. Knitting Mills, Inc. v. Int'l Women's Apparel, Inc., No. 99 Civ. 4643, 2000 WL 1290608, at *2 (S.D.N.Y. Sept. 11, 2000) (quoting US Airways Grp. v. British Airways PLC, 989 F.Supp. 482, 493 (S.D.N.Y.1997)).

Plaintiffs' partnership by estoppels argument fails.  Under New Jersey Law, a "purported partner is liable to a person to whom the representation is made, if that person, relying on the representation, *enters into a transaction with the actual or purported partnership*."  N.J.S.A. 42:1A-20 (emphasis added).[5]  Since Plaintiffs have not alleged that they entered into any transaction with the purported partnership or with any Defendant, their estoppels argument fails.  Cf. Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1169 (2d Cir. 1993) (rejecting partner by estoppel argument where plaintiff did not give "credit" to defendant).  Having failed to adequately allege the existence of a partnership relationship, Plaintiffs' claims premised on partnership law fail.

    b. Agency

Plaintiffs also claim that an "apparent agency" relationship existed between the Defendants.  Apparent authority "arises from the 'written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that

---

[5] New York has a similar law, whereby a partner by estoppel "is liable to any such person to whom [a representation of partner status] has been made, *who has, on the faith of such representation, given credit* to the actual or apparent partnership . . . ."  N.Y. Partnership Law. § 27 (emphasis added).

the principal consents to have [an] act done on his behalf by the person purporting to act for him.'" Minskoff v. Am. Exp. Travel Related Servs. Co., Inc., 98 F.3d 703, 708 (2d Cir. 1996) (quoting Restatement (Second) of Agency § 27.)  To state claim based on an apparent agency relationship, "[t]here must be proof of reliance and change of position." Marfia v. T.C. Ziraat Bankasi, New York Branch, 100 F.3d 243, 251 (2d Cir. 1996); see also Dinaco, Inc. v. Time Warner, Inc., 346 F.3d 64, (2d Cir. 2003) (affirming dismissal because "to hold [defendant] liable under a theory of apparent authority, [plaintiff] must show that it reasonably believed that [the purported agent] entered into the agreement with [plaintiff] on behalf of [defendant] and not on its own behalf.").  Plaintiffs have not alleged that they relied upon or changed their position based on the representation that the Defendants were acting "In Partnership," or that Plaintiffs entered into any transaction with any Defendant.  Accordingly, Plaintiffs' claims premised upon an apparent agency relationship fail.

In sum, Plaintiffs have not stated a claim for contributory or vicarious liability, and their attempts to premise their claims on partnership or agency law fail.  Accordingly, the Court dismisses Counts Five and Six.

    5.   Trademark Counterfeiting

The Lanham Act defines a "counterfeit" mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.  An alleged counterfeit mark "must be compared with the registered mark as it appears on actual merchandise to an average purchaser." Colgate-Palmolive Co. v. J.M.D. All-Star Import and Export Inc., 486 F. Supp. 2d 286, 289 (S.D.N.Y. 2007); see also GTFM, Inc. v. Solid Clothing Inc., No. 01 Civ. 2629(DLC), 2002 WL 1933729, at *2 (S.D.N.Y. Aug.21, 2002) ("There is nothing in the [Lanham] Act [ ] which states that to determine whether a defendant is engaged

in counterfeiting, one compares plaintiff's and defendant's marks in the abstract, without considering how they appear to consumers in the marketplace."). Moreover, "it cannot be enough that one word used in the allegedly offending mark is the same, with no reference to font, color, typeface, or context." GMA Accessories, Inc. v. BOP, LLC, 765 F.Supp.2d 457, 472 (S.D.N.Y. 2011).

By comparing Defendants' use of the Phrase to Plaintiffs' use of the Phrase, it becomes abundantly clear that Plaintiffs have not stated a claim for trademark counterfeiting. As discussed above, Plaintiffs depict the Phrase in non-italicized lowercase blue letters, followed by a trademark; Defendants depict the Phrase in italics, in either white ink or a combination of black and pink ink, varying between capital and lower case letters, and printed in a noticeably different font. (Compare Compl. Exs. D, E, with Ex. N.) Plaintiffs do not use the Phrase with respect to merchandizing a print Magazine; and Defendants do not use the Phrase to market personal services or retreats. GMA Accessories, 765 F.Supp.2d at 472 (holding that where plaintiff "makes no allegation that the products upon which the allegedly counterfeit mark was used were similar in any way to products it produces" that "there is no deceptive suggestion of an erroneous origin" to state a counterfeiting claim.) Since the "the appearance of the [mark] as used by [defendants], both in itself and in how it appeared on [defendants' product], is not identical with or substantially indistinguishable from [plaintiffs'] use of the [mark]," Plaintiffs' trademark counterfeiting claim fails. GTFM, 2002 WL 1933729, at *2. Accordingly, the Court dismisses Count One.

      6.  First Amendment Concerns

Having disposed of all of Plaintiffs' federal claims, the Court does not reach Defendants' First Amendment argument.

### B. State Law And Common Law Claims

Neither party sufficiently addressed Plaintiffs' state law and common law claims (Counts Seven through Thirteen). Defendants argue that these claims are "analogous or derivative" to the federal claims, but devote only two paragraphs to this argument, and provide no specific analysis. (Def. Br. 28-29.) In their opposition, Plaintiffs do not address Defendants' argument or, in general, the merits of their state law and common law claims.

"[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" Kolari v. New York Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). Thus, "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well," based on considerations of judicial economy, convenience, fairness, and comity. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) (quoting Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).

The Court has federal jurisdiction over this case based on the existence of a federal question, under 28 U.S.C. § 1331, and federal trademark claims, under 28 U.S.C. § 1338, but it has dismissed the federal claims. Accordingly, the Court declines supplemental jurisdiction over the state and common law claims and dismisses those claims without prejudice.

## CONCLUSION

For the reasons above, the Defendants' motion to dismiss the federal claims is GRANTED. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state and common law claims and dismisses those claims without prejudice.

The Clerk of Court is directed to terminate this motion (Dkt. No. 51) and close this case.

Dated: New York, New York  
       March 6, 2012

SO ORDERED

*Paul A. Crotty*

PAUL A. CROTTY  
United States District Judge